

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ERROLL DAVIS

No. 13 CR 902-2

Judge Samuel Der-Yeghiayan

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant ERROLL DAVIS, and his attorney, GEORGE E. BECKER, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with willfully filing a personal tax return for calendar year 2008 containing information which was false and fraudulent as to material matters therein, in violation of Title 26, United States Code, Section 7206(1) (Count 4).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 4 of the indictment, which charges defendant with willfully filing a personal tax return for calendar year 2008 containing information which was false and fraudulent as to material matters therein, in violation of Title 26, United States Code, Section 7206(1).

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in Count 4 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about February 9, 2009, defendant ERROLL DAVIS willfully made and subscribed, and caused to be made and subscribed, a Form 1040 for the calendar year 2008, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the IRS, which return he did not believe to be true and correct as to every material matter, in that if falsely stated (1) on line 17 that the losses associated with his real estate were $13,414, which overstated DAVIS's expenses and losses in that DAVIS falsely included expenses paid by Individual A for the apartment building located at 1665 E. 79th Street, Chicago, Illinois, (2) on line 22 of said return the amount of DAVIS's total income, whereas DAVIS well knew that the amount set forth on line 22 was false and fraudulent because DAVIS's total income

2

actually exceeded that amount, since the return failed to include additional income of approximately $30,000, which funds DAVIS obtained in 2008 from Individual A and which were used to benefit DAVIS, and which overstated DAVIS's rental real estate losses; and (3) on line 40 that the itemized deductions from his Schedule A were $38,499, whereas DAVIS well knew that the amount set forth on line 40 was false and fraudulent because that amount falsely included $15,035 in mortgage interest paid by Individual A for the Apartment Building located at 1665 E. 79th Street, Chicago, Illinois, all in violation of Title 26, United States Code, Section 7206(1).

Specifically, in approximately October 2008, DAVIS agreed to assist Individual A by purchasing an apartment building located at 1665 E. 79th Street in Chicago, Illinois (the Apartment Building) and owned by Individual A. DAVIS understood that Individual A had reached her credit limit, was unable to obtain additional loans, and needed funds to pay past-due rent and mortgage obligations and to operate her businesses.

DAVIS and Individual A agreed that DAVIS would not make a down payment and that he would obtain 100% financing for his purchase of the Apartment Building. DAVIS and Individual A further agreed that DAVIS would only obtain a mortgage in the amount of 50% of the appraised value of the Apartment Building. DAVIS and Individual A agreed that Individual A would continue to pay the mortgage and bills for the Apartment Building and to collect and keep the rent from the units in the

Apartment Building. DAVIS and Individual A agreed that Individual A would buy the Apartment Building back from DAVIS within three years.

On or about November 7, 2008, DAVIS signed a real estate contract for the purchase of the Apartment Building, which falsely stated that the purchase price for the Apartment Building was $900,000 and that DAVIS had paid $90,000 in earnest money to Individual A.

Individual A referred DAVIS to Robert Michael at Citizens Bank and Trust of Chicago (Citizens Bank) in order to obtain financing to purchase the Apartment Building. In the presence and with the assistance of Michael, DAVIS executed a mortgage loan application that contained false information, which information did not agree or correspond with information on DAVIS's tax returns or his bank statements, such as earning $12,000 in rental income when DAVIS had no rental property; earning $20,000 in interest income when DAVIS had no such interest income; and claiming over $325,000 in savings when DAVIS had less than $10,000 in savings. At the direction of Michael and with the assistance of Individual A, DAVIS signed false leases to support the false representation that he would have a sufficient cash flow to make the monthly mortgage payments for the Apartment Building. DAVIS submitted and caused to be submitted the false real estate contract, false loan application, and false leases to Citizen Bank, knowing that the statements in the documents were material to Citizen Bank's decision to issue a mortgage loan to DAVIS. At the direction of Michael and with the assistance of Individual A, DAVIS then established 1665 E. 79th Street,

4

LLC with the Illinois Secretary of State for the purpose of placing ownership of the Apartment Building in its name.

On or about November 14, 2008, DAVIS and Individual A attended the closing of DAVIS's purchase of the Apartment Building. During the closing, Individual A, via her corporation, issued a warranty deed, transferring ownership of the Apartment Building to DAVIS's corporation, 1665 E. 79th Street, LLC. DAVIS then received a title company check issued to 1665 E. 79th Street, LLC in the amount of $634,046.99, which DAVIS understood to represent the proceeds of the transaction. DAVIS endorsed the title company check and provided it to Attorney A, the attorney representing Individual A, for deposit into Attorney A's client trust account.

On or about November 18, 2008, DAVIS accompanied Individual A to Attorney A's law office. DAVIS observed Individual A go into a meeting with Attorney A in Attorney A's office while DAVIS remained outside. After meeting with Attorney A, Individual A provided DAVIS with a check for $30,000 that was payable to DAVIS and drawn on Attorney A's client trust account. DAVIS understood that the $30,000 was payment from Individual A for having obtained a mortgage loan and placing the Apartment Building in his own name, among other reasons. DAVIS deposited the $30,000 check into his personal bank account and used the funds for personal expenses. DAVIS intentionally failed to report that money to the IRS, even though he knew that those funds constituted income to him, and that he was required by law to report those funds as income on his federal income tax return for 2008.

Following DAVIS's purchase of the Apartment Building, Individual A continued to pay the mortgage on the property through 2010 and then periodically gave money to DAVIS to pay the mortgage after that. DAVIS never lived at the property and, between tax years 2008 and 2010, never collected any rents or paid any expenses whatsoever related to the property.

For tax years 2008, 2009, and 2010, DAVIS received annual IRS Forms 1098, which showed the interest paid by Individual A in connection with the mortgage on the Apartment Building.

On his U.S. Individual Tax Return (Form 1040) for the calendar year 2008, DAVIS claimed a total home mortgage interest deduction of $25,937 on his Schedule A, when, in fact, DAVIS knew that he had only paid interest on his personal residence and a residence used by relatives. The amount falsely included $15,035 paid by Individual A in connection with the mortgage on the Apartment Building and claimed by DAVIS. DAVIS also falsely claimed on line 17 of the return a loss of $13,414 from rental real estate, which included, as reflected on the Schedule E attached to the return, losses of $8,306 from the Apartment Building when, in fact, DAVIS knew that he incurred no such losses for the property. As charged in Count 4, on February 9, 2009, at Chicago, DAVIS willfully made and subscribed, caused to be made and subscribed, and caused to be filed his 2008 return containing false statements.

On his Form 1040 for the calendar year 2009, DAVIS claimed a business loss of $40,310, which amount falsely included $51,766 in mortgage payments, $19,600 in

repairs and maintenance, and $19,944 in other expenses for the Apartment Building and reflected on the Schedule C attached to the return, when, in fact, DAVIS knew that he incurred no such losses and made no such mortgage payments for the Apartment Building.

For the calendar year 2010, DAVIS filed both a Form 1040 as well as an IRS Form 1065 for 1665 E. 79th Street LLC. On his Form 1040, DAVIS falsely claimed a rental real estate loss of $20,311, which amount falsely included $41,159 in mortgage interest and other expenses paid by Individual A in connection with the Apartment Building and itemized in a statement attached to DAVIS's Form 1065 for 1665 E. 79th Street LLC, when, in fact, DAVIS knew that he incurred no such losses for the property.

7.    The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 3 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the Court must

order costs of prosecution, estimated not to exceed $500. Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2013 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     The base offense level is 14, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(E), because the tax loss and relevant conduct for calendar

years 2008, 2009, and 2010 is at least approximately $31,909 which is between $30,000 and $80,000.

        ii.      Pursuant to Guideline § 2T1.1(b)(1), the base offense level should be increased by 2 levels because the defendant failed to report income from criminal activity, which income exceeded $10,000 in 2008.

        iii.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iv.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

9

c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 13, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 12 to 18 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.    Both parties expressly acknowledge that while none of the guidelines calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(B) that certain

10

components of those calculations—specifically, those set forth above in subparagraph[s] (b)(i) and (ii) of this paragraph—are binding on the parties, and it shall be a breach of this Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g.      Defendant understands that with the exception of the guidelines provisions identified above as binding on the parties, the guidelines calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the sentencing guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.      Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding.

Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum

12

penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 902-2.

17.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

18.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from

defendant or defendant's partnership or corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

## Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him

unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

   iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

   b.  **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had

exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this agreement or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

16

20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights

### Presentence Investigation Report/Post-Sentence Supervision

21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

a.      Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct

18

that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

26.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

### Conclusion

27.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he

understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: *12 - 5 - 13*

ZACHARY T. FARDON
United States Attorney

ERROLL DAVIS
Defendant

MEGAN CUNNIFF CHURCH
Assistant U.S. Attorney

GEORGE E. BECKER
Attorney for Defendant